UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK TREVATHAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   - vs- | )    No. 06-cv-4044-JPG |
| | ) |
| ROGER E. WALKER, JR., in his | ) |
| individual and official capacity as Director, | ) |
| Illinois Department of Corrections, and | ) |
| EUGENE McADORY, in his individual | ) |
| capacity as Warden, Menard | ) |
| Correctional Center, Illinois Department | ) |
| of Corrections, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the defendants' motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 4). Plaintiff Mark Trevathan ("Trevathan") has responded to the motion (Doc. 6), and the defendants have replied to that response (Doc. 10).

**I.   Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Brown*, 398 F.3d at 908-09; *Holman*, 211 F.3d at 405. "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Brown*, 398 F.3d at 909 (internal quotations omitted); *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713,

715 (7th Cir. 2006).

Although liberal federal notice pleading standards ensure that even vague, non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). For example, "[t]he statute of limitations issue may be resolved definitively on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 688 (7th Cir. 2004). The defendants believe Trevathan has pled himself out of court in this case.

**II.    Facts**

The Complaint in this case alleges essentially the following.

From September 2000 to December 2003, Trevathan was employed by Health Professionals Ltd. ("Health Professionals"), an organization that contracted with the Illinois Department of Corrections ("IDOC") to provide health care workers at certain IDOC facilities. During that time, Trevathan was assigned to work at Menard Correctional Center ("Menard") as a nurse. Although Health Professionals was technically his employer, IDOC employees supervised him on a daily basis.

In December 2003, IDOC terminated its contract with Health Professionals, but automatically employed Health Professionals's former employees directly as IDOC employees. Thus, Trevathan remained in his position as a nurse, and his job duties and supervision remained unchanged. Nevertheless, he was categorized as a "probationary" employee because he had just

begun his employment directly with IDOC.

Shortly after IDOC assumed direct employment of Trevathan, an inmate was found dead, or near death, from hypothermia in his cell.  Questions were raised about Trevathan's attempt to give the inmate medicine several hours earlier, and on December 31, 2003, defendant Eugene McAdory ("McAdory"), the warden of Menard, suspended Trevathan pending an investigation of the events surrounding the inmate's death.

McAdory came to believe – wrongly – that Trevathan had falsified information relating to the inmate's death or had otherwise been negligent with respect to the inmate.  As a result, on February 20, 2004, McAdory ordered Trevathan to be terminated without giving him notice of the allegations of his wrongdoing, an opportunity to review the evidence against him, or an opportunity to be heard to tell his side of the story.  The same day, IDOC Director Roger E. Walker, Jr., ("Walker") approved Trevathan's termination, and Trevathan's employment with IDOC ended.

On February 21, 2006, the day after Presidents' Day holiday, Trevathan filed this lawsuit under 42 U.S.C. § 1983 alleging that McAdory (Count I) and Walker (Count II) violated his procedural due process rights by terminating him without sufficient notice and an opportunity to be heard.  It is clear from the Complaint that Trevathan believes he was deprived of a property right – his employment with IDOC;  it is not as clear that he believes he was also deprived of a liberty right – his reputation.

McAdory and Walker now ask the Court to dismiss this case on three grounds:  (1) Trevathan filed the case beyond the statute of limitations, (2) Trevathan had no property interest in his probationary employment and (3) qualified immunity because the property right, if it

existed, was not clearly established at the time.

**III.   Analysis**

    A.   <u>Statute of Limitations</u>

The statute of limitations on Trevathan's claims did not run before he filed this lawsuit on February 21, 2006. All parties agree that federal civil rights claims arising in Illinois, like Trevathan, are subject to the state two-year personal injury limitation period under 735 ILCS 5/13-202. *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001) (§§ 1983 and 1985); *see Wilson v. Garcia*, 471 U.S. 261, 267-68 (1985) (generally, apply statute of limitations of most analogous state law to § 1983 and § 1988 cases). They dispute, however, when Trevathan's cause of action accrued and the two-year statute of limitations began to run.

McAdory and Walker argue that the two-year statute of limitations began to run on December 31, 2003, the date he was suspended, because that is when he knew that his constitutional rights had been violated. Thus, his February 21, 2006, Complaint is clearly outside the statute of limitations. Alternatively, they argue that, even if Trevathan's cause of action did not accrue until February 20, 2004, the day Trevathan was fired, his February 21, 2006, Complaint is a day too late. They believe that Trevathan should have filed the Complaint on February 20, Presidents' Day (formerly known as Washington's Birthday), using the Court's electronic case filing ("ECF") system, which is available to litigants 24 hours a day, 365 days a year.

Trevathan counters that had his cause of action been founded on his suspension, the defendants accrual argument might be correct. However, his cause of action is founded solely on his termination, not his suspension, so it accrued on February 20, 2004. He then points to

4

Federal Rule of Civil Procedure 6(a) to argue that because the statute of limitations expired on a legal holiday, he had until the end of the next day to file his lawsuit.

The first issue when a statute of limitations is in question is accrual, for that is when the statute of limitations begins to run. Federal law determines when the cause of action accrues, *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994), and under federal law, a cause of action accrues "when the plaintiff knew or should have known that [he] had sustained an injury." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 688 (7th Cir. 2004). For constitutional violations, the cause of action accrues when the plaintiff knew or should have known that his constitutional rights had been violated. *Lawshe*, 16 F.3d at 1478 (citing *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)); *see Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (*per curiam*). Generally, equal protection and retaliation claims accrue when the plaintiff is notified that he will be terminated; procedural due process claims accrue when the plaintiff is actually terminated without due process. *Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1220 n. 5 (7th Cir. 1994) (citing *Lawshe*, 16 F.3d at 1479-80).

In this procedural due process case, Trevathan's causes of action accrued on February 20, 2004, the day he was terminated allegedly without due process of law. *See Sherwin Manor*, 37 F.3d at 1220 n. 5; *Lawshe*, 16 F.3d at 1479-80. This is the time when Trevathan could first have been aware that he had not received due process before his termination. Up until that time, it was still possible that he could have received notice and a hearing; only on February 20, 2004, could he have known that he would not be afforded those procedures. Accordingly, his causes of action accrued on February 20, 2004.

The second question the Court must answer is when the two-year limitation period had

run.  Rule 6(a) provides, in pertinent part,

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, *or a legal holiday*, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, *in which event the period runs until the end of the next day* which is not one of the aforementioned days. . . .  As used in this rule and in Rule 77(c), "legal holiday" includes . . . Washington's Birthday. . . .

(emphasis added).  Although Rule 6(a) does not expressly mention statutes of limitations, courts generally apply it to computing federal statutes of limitations when the statute does not specifically instruct how to compute the limitations period.  *See Flanagan v. Johnson*, 154 F.3d 196, 200-02 (5th Cir. 1998) (Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d));  *see, e.g., Pearson v. Furnco Constr. Co.*, 563 F.2d 815, 818-19 (7th Cir. 1977) (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1)).  This is true even where federal statutes borrow state statutes of limitation, as 42 U.S.C. § 1983 does.  *See, e.g., Henderson v. Bolanda*, 253 F.3d 928, 931 n. 2 (7th Cir. 2001);  *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997).

Under the time computation rules in Rule 6(a), Trevathan filed his Complaint within the two-year statute of limitations.  As noted earlier, his cause of action accrued on February 20, 2004.  Under Rule 6(a), the two-year period would have expired on February 20, 2006.  However, since February 20, 2006, was a legal holiday, Presidents' Day (formerly known as Washington's Birthday), it was not included in the two-year period, and the two-year period was effectively extended an additional day to February 21, 2006.  Rule 6(a) is not rendered inapplicable simply because a party may be able to file a document on a legal holiday by using

ECF. Thus, Trevathan's February 21, 2006, Complaint was timely.

The Court now turns to the defendants' qualified immunity argument, which encompasses their assertion that Trevathan has failed to state a claim upon which relief could be granted.

    B.    <u>Qualified Immunity</u>

The Court finds that McAdory and Walker are entitled to qualified immunity from Trevathan's claim that he was deprived of a constitutionally protected property right. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *accord Saucier v. Katz*, 533 U.S. 194, 206 (2001). It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If it is clear that there has been no constitutional violation, there is no need for further inquiry; the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. In the interest of promoting clarity in legal standards, the

Court should decide the first question even if the officer is clearly immune. *Wilson*, 526 U.S. at 609; *Denius*, 209 F.3d at 950.

### 1.. Violation of a Constitutional Right

Trevathan has failed to allege a constitutionally protected property right. McAdory and Walker argue that Trevathan had no protected property right in his probationary employment with IDOC. Trevathan counters that his probationary employment with IDOC, following directly on the heels of three years' employment in the same position with Health Professionals, gave rise to a contract or an understanding that he had a property right to his job. He also argues that he had a liberty interest in his reputation that was damaged by his termination.

In a procedural due process case, the plaintiff must show (1) that he had a liberty or property interest of which he was deprived and (2) that the procedures attendant to that deprivation were constitutionally insufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972), and *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). To establish a property or liberty right, a plaintiff must demonstrate a legitimate claim of entitlement, not just a hopeful expectation. *Thompson*, 490 U.S. at 460; *Roth*, 408 U.S. at 577; *Zemke v. City of Chicago*, 100 F.3d 511, 512 (7th Cir. 1996); *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).

Illinois statutes and regulations did not give Trevathan a legitimate claim to his job. "Property interests are not created by the Constitution but are 'defined by existing rules or understandings that stem from an independent source such as state law' . . . ." *Polenz*, 883 F.2d at 555 (quoting Roth, 408 U.S. at 577). The claim of entitlement may be created, for example,

by statute or by contract. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). "[P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, property denotes a broad range of interests that are secured by existing rules or understandings." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (internal citations and quotations omitted). To determine whether an interest in employment is a protected property interest, courts consult state law. *Bishop*, 426 U.S. at 344; *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996). Under Illinois law, "[a] person has a property interest in his job where he has a legitimate expectation of continued employment . . . based on a legitimate claim of entitlement." *Faustrum v. Board of Fire & Police Comm'rs*, 608 N.E.2d 640, 641 (Ill. App. Ct. 1993), *cited by Draghi v. County of Cook*, 184 F.3d 689, 692 (7th Cir. 1999). If Trevathan had a legitimate expectation of continued employment based on a legitimate claim of entitlement, IDOC could not terminate him without due process. If he did not, his employment was at will, and IDOC was free to terminate him for any permissible reason, or no reason, without any process at all.

Trevathan does not contest that the Illinois Administrative Code provides for a six-month probationary employment period during which a new employee generally does not have a legitimate claim of entitlement to his job and therefore is not entitled to due process before he can be fired. *See* 80 Ill. Admin. Code § 302.300(a)(1). During this probationary time, the only limitation on the right to terminate is that termination must be approved at the director level. *See* 20 ILCS 415/8b.6; 80 Ill. Admin. Code § 302.320; *see, e.g., People ex rel. Sterba v. Blaser*, 337 N.E.2d 410, 414 (Ill. App. Ct. 1975). Trevathan does not contest that after that six-month period an employee becomes a "certified" employee with a legitimate claim of entitlement to his

9

job and the right to notice and a hearing before he can be terminated. *See* 80 Ill. Admin. Code §§ 302.310, 302.625 & 302.705. He believes, however, that there are circumstances in which an employee technically within the probationary period can have a legitimate claim of entitlement to his job by virtue of contracts or understandings with the state. See, for example, *Lewis v. Hayes*, 505 N.E.2d 408 (Ill. App. Ct. 1987), in which the Illinois Appellate Court held that a probationary police officer had a property right to his employment by virtue of rules enacted by the municipality that employed him that required cause before he could be terminated from his probationary position. *Id.* at 411.

Trevathan argues that he is not like the regular probationary employee with no property right in his job. He believes that his three years of employment in essentially the same job with Health Professionals, which he argues was in privity with the state, created an understanding that he would be treated as an IDOC employee who had successfully passed his probationary employment period and that his probationary status was a "sheer formality."

Trevathan relies on the doctrine of privity to attribute his employment with Health Professionals to IDOC for employment status purposes. The doctrine of privity is often used in the context of *res judicata* to bind one party to a judgment entered against another, connected party who represented identical legal interests in the proceedings. *See* Restatement of Judgments § 83, cmt. a (1942); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825-26 (Ill. 1992).

The Court cannot see, however, how the doctrine of privity could create a legitimate expectation of continued employment in light of the plain language of the Illinois Administrative Code, which states, "A probationary period of six months shall be served by . . . an employee

who enters State service. . . ." 80 Ill. Admin. Code. § 302.300(a). The Illinois Administrative Code makes no exceptions for new state employees who are functioning in jobs they have held prior to their official state employment. Thus, there is no basis for an understanding that such an employee would have a legitimate expectation of continued employment based on a legitimate claim of entitlement. For this reason, the Court finds that Trevathan cannot show that he had a property interest in his probationary employment under any set of facts consistent with those alleged in the complaint. Therefore, the defendants are entitled to qualified immunity.

### 2. Clearly Established Property Right

Alternatively, even if Trevathan had a protected property right to his continued employment, that right was not clearly established in early 2004. If the plaintiff has alleged a constitutional violation, the Court must also determine whether the right was sufficiently clear at the time of the violation that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *accord Brosseau*, 543 U.S. at 198. To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend. *Denius*, 209 F.3d at 950-51. "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free

from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001).

In this case, Trevathan has not pointed to any case where a court has held that an at-will employee has a property right because he held the same position for a different employer for longer than a probationary period. Neither has Trevathan pointed to any analogous case. He admits that his case involves "unique factual circumstances" but argues that well established general due process and privity principles clearly establish his property right. He is right that it is possible to find clearly established law governing a case, even where the case presents a novel factual situation. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 738 (2002). However, in such cases, "in the light of pre-existing law the unlawfulness [of the alleged conduct] must be apparent." *Anderson*, 483 U.S. at 640 (citations omitted). While the conclusions Trevathan draws from caselaw existing in 2004 may be apparent to him, the Court cannot say that it would have been apparent to a reasonable officer like McAdory or Walker. Trevathan's theory depends on applying the doctrine of privity to overcome the plain language of a statute that does not convey a property right. This is not a task reasonable officers should be expected to do absent caselaw demonstrating how to do so. There is no reason McAdory or Walker should have believed they were violating Trevathan's procedural due process rights when they terminated him without notice or a hearing.

For this alternative reason, McAdory and Walker are entitled to qualified immunity from Trevathan's property right claim.

C. <u>Liberty Interest</u>

Trevathan asks the Court not to dismiss his case because he has been deprived of a liberty right to his reputation. Alternatively, he asks the Court to allow him to amend his complaint to add a claim for deprivation of a liberty right if the Court finds he has not adequately pled such a claim.

The Supreme Court has acknowledged an individual's liberty interest in his reputation. *See Paul v. Davis*, 424 U.S. 693 (1976). *Paul* established what is referred to as the "stigma plus" test to determine if a liberty interest in reputation exists. That test requires a plaintiff to show that defamation by a government actor causes more than serious impairment of his future employment, but also an alternation of his legal status. *Id.* at 708-09. "For a plaintiff to establish a protectable liberty interest, any stigmatic harm must take concrete forms and extend beyond mere reputational interests. The defamatory statements must alter or extinguish a right or status previously recognized by state law." *Brown v. City of Michigan City*, 462 F.3d 720, 730 (7th Cir. 2006) (internal citations and quotations omitted).

Trevathan's complaint says nothing about a deprivation of a liberty interest; it is limited solely to an alleged deprivation of a property interest. Therefore, the complaint is not sufficient to fairly put the defendants on notice of such a claim against it. However, because it appears that Trevathan may be able to plead a claim for deprivation of a liberty interest, the Court will refrain from entering judgment at this time and will allow Trevathan a short period to amend his complaint to add the claim.

**IV. Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motion to dismiss (Doc. 4);

- **DISMISSES** Counts I and II **with prejudice** on the basis of qualified immunity;

- **ORDERS** that Trevathan shall have up to and including December 22, 2006, to amend his complaint to add claims for deprivation of a liberty interest in his reputation.  Should Trevathan choose not to amend his complaint to add such claims, the Court will enter final judgment; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  November 27, 2006**

s/ J. Phil Gilbert
**JUDGE**
