UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

MARK TREVATHAN,

    Plaintiff,

v.

ROGER E. WALKER, JR., in his individual and official capacity as Director, Illinois Department of Corrections, and EUGENE McADORY, in his individual capacity as Warden, Menard Correctional Center, Illinois Department of Corrections,

    Defendants.

Case No. 06-cv-4044-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' motion for summary judgment (Doc. 31). Plaintiff Mark Trevathan ("Trevathan") has responded to the motion (Doc. 37), and the defendants have replied to that response (Doc. 39). The defendants also move to strike one of Trevathan's exhibits (Doc. 40). Trevathan has not responded to that motion.

**I.    Standard for Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for

the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II. Facts

Viewing all admissible evidence and drawing all reasonable inference in Trevathan's favor, the Court finds the following relevant facts for the purpose of this motion.[1]

From September 2000 to December 2003, Trevathan worked as a nurse at Menard Correctional Center ("Menard"). On December 16, 2003, due to a change in management of the health care services at Menard, Trevathan began a period of probationary employment with the Illinois Department of Corrections ("IDOC"). At that time, defendant Eugene McAdory

---

[1]The Court notes that a number of the defendants' citations to Trevathan's deposition are inaccurate. Where the Court has been able to locate the improperly cited text within the vicinity of the given cite, it has considered the evidence. The Court warns the defendants' counsel, however, that such inexactitude is inexcusable and will not be tolerated in future filings in this case or in any other.

2

("McAdory") was the warden at Menard and defendant Roger E. Walker, Jr. ("Walker") was the director of IDOC.

Shortly thereafter, on the morning of December 25, 2003, inmate Charles Platcher ("Platcher") was found in his health care unit cell dead, or near death, from hypothermia. Several hours earlier, Trevathan, who knew Platcher was on suicide watch, had found Platcher nude on his cell floor and had attempted to give Platcher his medication. Platcher had said, "No," and had refused to take it. Later Platcher had been taken to the hospital and been pronounced dead. Questions were raised about Trevathan's attempt to give Platcher his medication, and on December 31, 2003, McAdory had Trevathan escorted from Menard in front of his coworkers, placed him on administrative lockout – a sort of suspension – and ordered him to report to McAdory's office on January 2, 2004.

On January 2, McAdory accused Trevathan of being negligent with respect to his care of Platcher and of lying on an incident report. He then found Trevathan guilty of negligence and gave him the option of resigning or being discharged. Trevathan chose to be discharged. His termination became final on February 20, 2004.

Platcher's death was heavily publicized in the media. Trevathan objects to the following statements and others similar in substance:

- A March 31, 2004, *Chicago Tribune* story quotes unnamed officials as stating that "a prison nurse was fired . . . in the death of Charles Platcher, 31, who was found naked on the concrete floor of his solitary cell in Menard Correctional Center on Dec. 25," and quoted an IDOC spokesman as saying disciplinary action was taken within a week of the Platcher's death based on an investigation into the incident.

- An April 1, 2004, *St. Louis Post-Dispatch* article quoted an IDOC spokesman as saying, "Three prison employees were disciplined after the incident [Platcher's death]."
- A June 23, 2004 *Chicago Tribune* article quoted McAdory, who was no longer employed by IDOC at the time, referring to "mistakes made by his staff" including "a nurse's failure to follow up on Platcher's incoherent response from a cell in the prison's medical unit about 4 a.m." The article continued to say that McAdory "stopped short of blaming Platcher's death on the nurse," but "called the incident 'tragic' and a 'mistake.'" It also recounted erroneously that Platcher grunted or moaned in response to a nurse's attempt to give Platcher medication. He stated that the nurse, in a "crucial mistake" interpreted the response as a refusal instead of accepting only a distinct "no" from the inmate and should have entered the cell to investigate the inmate further and notified the prison doctor or a superior officer. The article stated that McAdory fired the nurse within a week of the incident.

Although the defendants never named Trevathan in any of their statements, people in Trevathan's home town soon drew the conclusion that Trevathan was the nurse in question. Trevathan was also quoted in one local newspaper as saying he had been fired and he believed he was a scapegoat for IDOC.

Trevathan was able to find other employment as a nurse after his discharge. During October and November 2004 and then again from November 2005 to July 2006, Trevathan worked part-time as a nurse in nursing homes on an "as needed" basis. Nevertheless, under current policies, neither IDOC nor any medical services contractor for IDOC will hire Trevathan

as a nurse because of his termination for negligence in his duties.[2]  In addition, Trevathan applied for employment as a nurse at the Federal Bureau of Prisons and the Illinois Department of Human Services but was not hired.  In his applications to those employers, Trevathan disclosed his termination as a result of charges of negligence and lying in connection with Platcher's death.

On February 21, 2006, Trevathan filed this lawsuit under 42 U.S.C. § 1983 alleging that McAdory (Count I) and Walker (Count II) violated his procedural due process rights by terminating him without sufficient notice and an opportunity to be heard.  In his original complaint, Trevathan alleged a deprivation of his property right in his employment, but after the Court found that no such property right existed and dismissed those claims, Trevathan amended his complaint to allege a deprivation of a liberty right in "free choice of occupation and employment in government service."

McAdory and Walker ask the Court to grant summary judgment on a variety of grounds, including that the defendants are entitled to qualified immunity because it was not clear at the time that their actions violated any liberty interest Trevathan had.

## III. Analysis

The Court finds that McAdory and Walker are entitled to qualified immunity from Trevathan's claim that he was deprived of a constitutionally protected liberty right.  Qualified

---

[2]The evidence supporting this fact is the subject of the defendants' motion to strike (Doc. 40).  While the Court finds that such testimony would be subject to striking as expert testimony not disclosed in Rule 26(a)(2) disclosures, the Court declines to do so because, for the most part, the testimony is not material to the outcome of this case.  To the extent that the affidavit relates to hiring practices of state agencies other than IDOC, the Court has disregarded the affidavit as without foundation for such knowledge.

5

immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *accord Saucier v. Katz*, 533 U.S. 194, 206 (2001). It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

A court required to rule upon the qualified immunity issue must first consider whether the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If it is clear that there has been no constitutional violation, there is no need for further inquiry; the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. In the interest of promoting clarity in legal standards, the Court should decide the first question even if the officer is clearly immune. *Wilson*, 526 U.S. at 609; *Denius*, 209 F.3d at 950.

If the evidence demonstrates that there may have been a constitutional violation, then the court should determine whether the right allegedly violated was clearly established at the relevant time. *Id.* at 202. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201; *see McNair v. Coffey*, 279 F.3d 463, 465 (7th Cir. 2002). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is

appropriate." *Saucier*, 533 U.S. at 202. The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950.

In this case, the key inquiry for the purpose of qualified immunity analysis is whether, in the particular situation confronted by the defendants, it would have been clear to a reasonable official that their conduct was unlawful. *See Saucier*, 533 U.S. at 202.

A. Violation of a Constitutional Right

No reasonable jury could find that Trevathan has suffered a constitutional violation, that is, that he was deprived of a protectable liberty right.

In a procedural due process case, the plaintiff must show (1) that he had a liberty or property interest of which he was deprived and (2) that the procedures attendant to that deprivation were constitutionally insufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972), and *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)); *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 728 (7th Cir. 2006).

To establish a deprivation of a liberty right in reputation, a plaintiff must demonstrate "stigma plus," that is, defamation by a government actor that causes more than just a serious impairment of his future employment but an alteration of his legal status. *Paul v. Davis*, 424 U.S. 693, 708-09 (1976); *Siegert v. Gilley*, 500 U.S. 226, 234 (1991). For a plaintiff to demonstrate deprivation of a protectable liberty interest, he must establish "(1) he was stigmatized by the employer's actions; (2) the stigmatizing information was publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Dupuy v. Samuels*, 397 F.3d 493, 509 (7th Cir. 2005). For example, "when a state

7

actor casts doubt on an individual's good name, reputation, honor or integrity in such a manner that it becomes virtually impossible for the individual to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Id.* at 503 (internal quotations omitted).

1. Stigma

There is no evidence from which a reasonable jury could find the defendants stigmatized Trevathan such that constitutional rights are implicated. An act is only stigmatizing in the constitutional sense if it is false and defamatory, *Strasburger v. Board of Ed.*, 143 F.3d 351, 356 (7th Cir. 1998), and "if it is accompanied by a publicly announced reason that impugns the employee's moral character or implies dishonesty or other job-related moral turpitude," *Hedrich v. Board of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001) (citations and quotation marks omitted). *Accord Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003). Examples include allegations of "immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts." *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993). Charges of "incompetence, neglect of duty and malfeasance," *Adams v. Walker*, 492 F.2d 1003, 1008 (7th Cir. 1974), or "a label of incompetence or a failure to meet a specific level of management skills," *Mitchell*, 995 F2d at 167, are not sufficient to implicate a liberty interest. *See Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995); *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985). "[A] termination itself, and the announcement of the termination do not, in and of themselves, infringe a liberty interest." *Lashbrook*, 65 F.3d at 1349.

In this case, the statements in question were strictly limited to the performance of job duties, not personal or moral character. They did not say the nurse was dishonest, committed a

crime, or suffered from some other moral flaw. Furthermore, the defendants' statements to the media did not even name Trevathan as that anonymous nurse such that any stigma they might have caused would have been attached to him in particular. At the most, they stated the true fact that an anonymous nurse was terminated in connection with the death of an inmate, the opinion that the anonymous nurse bore some responsibility for the death, and the implication that the anonymous nurse was negligent in his duties. Thus, the defendants' statements were not stigmatizing in the constitutional sense.

    2.    Publication

There is also no evidence from which a reasonable jury could conclude that the defendants publicly disclosed their accusations and findings *against Trevathan*.

Trevathan first claims that maintenance of his personnel records in the State of Illinois' internal central personnel files satisfied the publication requirement. However, until those personnel records are disseminated to a potential employer, there is no publication. *See Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991).

There is no evidence that the defendants made statements to any other non-media member of the public, including potential future employers, about the circumstances surrounding Trevathan's termination. There is no publication simply because a future employer *may* ask a prior employer about the circumstances surrounding an employee's separation. The publication occurs only with the actual disclosure. *See Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir. 1992) (Flaum, J., concurring); *Johnson*, 943 F.2d at 17.

As far as public disclosure via statements to the media, none of those statements named Trevathan or even covertly pointed specifically to him. The fact that he was described as a male

9

nurse who had worked for IDOC for a matter of weeks is a description that could have applied to any number of male nurses who had transitioned to IDOC employment after the December 2003 change in management of Menard's health care services. That some members of Trevathan's home town drew their own conclusions that Trevathan was the nurse in question or that Trevathan himself disclosed the accusations and findings against him cannot be attributed to McAdory or Walker. *See Olivieri v. Rodriquez*, 122 F.3d 406, 408-09 (7th Cir. 1997) (self-publication does not satisfy publication requirement).

Trevathan argues that this case is like *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), where placement of a name on a list was deemed to be essentially the equivalent of publication. In that case, the plaintiffs were child care workers and applicants for child care positions about whom the Illinois Department of Children and Family Services ("DCFS") had found "credible evidence" indicating they had committed child abuse or neglect. When such evidence is found, DCFS makes an "indicated" notation in its central register, and indicated individuals are effectively precluded from further work in the child care industry in Illinois. *Id.* at 503. The plaintiffs challenged the procedures surrounding an indicated finding and placement on the central register. There, with respect to the publication element, DCFS argued it did not disclose the entry of names simply by placing them on the central register, so it did not meet the publication requirement. *Id.* at 510.

The Court of Appeals rejected that argument, noting that as a matter of state law, child care worker applicants listed on the central register must be disclosed to potential child care employers. *Id.* Thus, although DCFS did not actively disseminate the stigmatizing information, the presence of the state law requiring dissemination was sufficient to allow entry of the name on

the central register to constitute publication. *Id.*

This case can be distinguished from *Dupuy*. In *Dupuy*, the placement on the list was tantamount to dissemination because disclosure of the list was required by state law, but no one has pointed to a similar requirement in this case. In this case, no party has cited any actual disclosure by the defendants of any stigmatizing information identifying Trevathan outside of the State of Illinois' central personnel files or any state law requiring the dissemination of any IDOC or State of Illinois employment record before a nurse can be hired by another health care employer in the state. *Dupuy* is simply inapplicable in this regard.

        3.        <u>Alteration of Status or Rights</u>

Most importantly, the Court takes issue with whether Trevathan can prove he suffered an alteration in his legal rights or status, that is, that it is virtually impossible for him to find new employment in his chosen field.

It is clear that Trevathan, a nurse, is able to find some employment in the field of nursing. He obtained at least two, part-time, "as needed," positions in nursing homes following his discharge and the defendants' statements about him. Indeed, he admits in his response that he "is not arguing that he literally cannot obtain *any* employment in the nursing profession." Pl. Resp. at 3. This is sufficient to show Trevathan was not unemployable. *See Townsend v. Vallas*, 256 F.3d 661, 671-72 (7th Cir. 2001) (plaintiffs continuing employment as swimming instructor forecloses argument that it was virtually impossible to find employment in his chosen field of swimming instruction/coaching). Furthermore, there is no evidence from which a reasonable jury could find anything the defendants did or said caused other government departments' (the Federal Bureau of Prison or the Illinois Department of Human Services) failure to hire him or

would cause them to not hire him at some time in the future. Thus, there is no evidence from which a reasonable jury could find the things the defendants did or said altered Trevathan's legal status as one authorized by the state to practice nursing. Their acts and statements simply limited his employment opportunities, at least for the moment, to ones he finds less desirable than his former job.

Trevathan's claim that he is unable to find a job in his chosen field because he is completely foreclosed from *government* nursing jobs, which can pay up to twice as much as other nursing jobs, takes too narrow a view of the field of opportunities available to him. Trevathan relies on *Larry v. Lawlor*, 605 F.2d 954, 956 (7th Cir. 1978), in support of his position that exclusion from government nursing jobs is sufficient to establish the deprivation of a protectable liberty interest. In that case, Maurice Larry challenged the adequacy of the procedures which resulted in his being found ineligible for federal employment. *Id.* at 956. The ineligibility finding "bar[red] him from all federal employment, a significant sector of the job market, for up to three years" and "deprived [him] of the opportunity to work in any capacity for any branch of the government." *Id.* at 958. The tangible loss of employment opportunities for Larry in the field of federal government employment, which the Court of Appeals noted dominated the field of opportunity, were sufficiently widespread to implicate a liberty interest. *Id.* at 958-59.

*Larry* is distinguishable from the case at bar. Unlike Larry, Trevathan is not barred from all work throughout an entire major governmental body. In fact, there is no evidence that he is *barred* from any work at all as Larry was when he was deemed ineligible for federal employment. Even if he were barred from IDOC nursing jobs or state nursing jobs, there is no

evidence that such positions dominate the nursing employment market on a level comparable to federal employment in *Larry* such that a liberty interest would be in play. Had the defendants' actions actually barred Trevathan from all employment by the State of Illinois (similar to *Larry*) or from all employment in the nursing field (similar to *Dupuy*), he would be on firmer ground. However, in Trevathan's case, nursing jobs, albeit less desirable ones, are still available to him.

Trevathan's legal status is that of a practicing nurse, not of a practicing nurse who works for the government. Indeed, whatever certification he holds from the state surely authorized him *to be a nurse*, not *to be a government nurse*. Nothing the defendants did or said took that right away from him or the right to any other employment by the State of Illinois. So long as Trevathan is not deprived of his right to practice nursing generally or to work for the state, he can claim no alteration of his legal status or deprivation of a liberty interest.

B.     Clearly Established Liberty Right

Alternatively, even if Trevathan had a protected liberty interest, that right was not clearly established in early 2004. If there is evidence from which a reasonable jury could find a constitutional violation, the Court must also determine whether the right was sufficiently clear at the time of the violation that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *accord Brosseau*, 543 U.S. at 198. To determine

13

whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend. *Denius*, 209 F.3d at 950-51. "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001).

In this case, Trevathan has not pointed to any case holding by early 2004 that it is a violation of a government employee's liberty interest where a probationary employee was wrongly fired for negligence, where his employment record was maintained by a central state office, where his superiors made statements in the media acknowledging the termination and its circumstances but not identifying the plaintiff as the terminated employee, and where the terminated employee was able to find some other non-governmental employment in the same field.

Trevathan cites *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), *Larry v. Lawlor*, 605 F.2d 954, 956 (7th Cir. 1978), and *Olivieri v. Rodriquez*, 122 F.3d 406 (7th Cir. 1997). *Dupuy*, however, was not decided until 2005, so it could not have established law for the defendants in 2004. The Court has already distinguished *Larry* on the basis that it involved exclusion from government-wide employment, not just government employment for a particular agency in a particular capacity. Finally, *Olivieri* appears to be parallel in some facts; Olivieri was a probationary Chicago police officer terminated without a hearing based on the grounds that he sexually harassed a female employee. *Olivieri*, 122 F.3d at 407. That case centered, however,

14

on whether Olivieri's own disclosure of the reason for his termination satisfied the publication requirement. *Id.* at 408. The Court of Appeals held that it did not and found no liberty interest infringement. *Id.* at 408-09. Because the issues were different in *Olivieri*, that case simply did not give any guidance in 2004 with respect to Trevathan's situation.

In the absence of a closely analogous case, it would not have been clear to McAdory or Walker that their actions violated Trevathan's right not to be deprived of a liberty interest without due process of law. Therefore, the defendants are entitled to summary judgment on the basis of qualified immunity. In light of this holding, the Court need not address the defendants' other arguments in support of summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the defendants' motion for summary judgment (Doc. 4);

- **DENIES** the defendants' motion to strike (Doc. 40); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: January 31, 2008**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**